### ROCHELL et al. v. MITCHELL
### No. 4427.

Court of Appeal of Louisiana. Second Circuit.
April 28, 1933.

Scarborough & Barham, of Ruston, for appellants.

Goff & Goff, of Arcadia, for appellee.

DREW, Judge.

Plaintiffs sued for the value of eighty-one head of cattle alleged to have died from arsenic poison received by the cattle from being dipped in a solution too strongly charged with an arsenical solution used in dipping vats for the purpose of freeing the cattle of ticks. They allege that defendant was the parish demonstration agent for Jackson parish, La., and that, acting as such in the performance of his duties, or assumed duties, on June 17, 1931, he charged and tested the vat of plaintiffs at their request and reported to them that the vat was ready for the cattle to be dipped; that soon after dipping the cattle some of them died and others became sick; that plaintiffs took the matter up with the defendant and were advised by him to dip again within seven days and to add two quarts more of the arsenic solution to the vat before dipping. They allege further that they followed his advice and directions and again dipped the cattle on June 24, 1931. Soon thereafter other cattle became sick and died and in all they lost eighty-one head of cattle.

The cattle that died, owned by J. T. Rochell, are alleged to have been worth $1,036, and the cattle owned by Jones, the other plaintiff, $826. They allege the death of the cattle was due to the dipping vat solution being overcharged with arsenic, which fact should have been known by defendant. They further allege that he was negligent in advising the dipping of the cattle the second time within seven days, which was too soon.

Defendant filed an exception of misjoinder which was overruled. He then filed an exception of no cause of action, which was overruled. Reserving his right under said exceptions, he answered, denying liability and alleging that he was under no legal duty to plaintiffs to charge or test their vat and that he did so at the request of plaintiffs purely as an accommodation to them. He further alleged that on the morning of June 17, 1931, he charged the vat and thoroughly tested it, finding it to test between .20 and .21 arsenic, which was the correct strength for the solution to have; that he did not advise dipping of the cattle the second time within seven days from the first dipping, but advised against it and advised that before another dipping two quarts of arsenic solution be added to the vat to again bring it up to strength. He further alleged that if the solution in the vat was stronger than .21 arsenic test some one other than he put it in the vat.

The lower court, in a well written opinion, rejected the demands of plaintiffs and they have prosecuted this appeal.

Defendant has answered the appeal and prays that the exception of misjoinder and of no cause of action be sustained.

■■ Our conclusion is that the judgment of the lower court is correct on the merits and therefore we find it unnecessary to pass on the exceptions. The judgment on the merits finally disposes of the case and if we should sustain either of the exceptions the case would not be finally disposed of, as neither exception would prevent suit again being filed.

The lower court's finding of facts is correct, and it has correctly determined the issue involved in this case in that part of its opinion which we herewith quote:

"The evidence shows that plaintiff Jones owns the pasture in which plaintiffs' cattle were kept and that plaintiff Rochell cared for them and supervised their dipping. Both plaintiffs had cattle in the herd. These cattle had been dipped at least twice before the 17th of June. Defendant is Parish Farm Agent, employed as such by the Police Jury, the School Board, the Extension Division of the Louisiana State University and the U. S. Department of Agriculture. He is a graduate of Louisiana State University and Agricultural and Mechanical College, and his competency to properly charge and test dipping vats and to give instructions in reference to cattle dipping is not questioned. In addition to his technical training, the evidence shows that he has had successful experience in that kind of work in Jackson Parish. On account of his position and his knowledge and skill in such matters plaintiffs sought his advice and assistance in dipping their cattle. Desiring to dip their cattle on the 17th of June, plaintiffs requested defendant to test their vat and charge the solution to proper arsenical strength. In the early morning of that day defendant performed that duty for plaintiffs. He testified that he first stirred the solution in the vat and made a preliminary test. This test showed the solution to contain approximately 16/100% arsenic. He then broke the seal on a five-gallon can of the dip solution used and took therefrom one gallon of the solution and added it to the contents of the vat. He again stirred the contents of the vat and again tested it. That test showed a strength of arsenic between 20/100 and 21/100. He made this test in the usual and customary way. There is no contradiction of that fact. And all the witnesses agree that a dipping solution of that arsenical strength will not injure cattle when dipped therein. Immediately after plaintiffs dipped their cattle on that day, a number of the cattle became sick and died. They immediately consulted with Mr. Mitchell, the defendant, about the situation. Here there is a conflict in the testimony. Mr. Rochell says that defendant told him to dip the cattle again and within seven days. Defendant says he told Mr. Rochell not to dip under fourteen days, but that if he would dip anyway under fourteen days not to dip under ten or twelve days. Plaintiffs dipped on the 7th day thereafter, that is, on the 24th of June. Defendant did not test the vat preparatory to this last dipping. He told Mr. Rochell that, in the event he did not test it himself, to just add two quarts of the arsenical dip solution to the vat, which amount would bring the solution in the vat back to its proper strength. This was done and the cattle again dipped. More of them became sick and, all told, 81 of them died. It is admitted that all of them died from the effect of arsenical poisoning. A short time after the last dipping the solution in the vat was tested and it is admitted that it contained thirty per cent. of arsenic, and that that is a sufficient amount of arsenic. when contained in a dipping solution, to kill cattle dipped therein. The cattle died from the effects of the poison received in that dipping vat. There is agreement on this point.

"The evidence also shows that in the following November Mr. Lee Stevenson dipped some cattle in plaintiff's vat. He sought to re-charge the vat from the contents of the five-gallon can of dip solution first opened by defendant on the 17th of June. He found only three quarts left in the can. The evidence, therefore, accounts for the use of only two gallons and one quart of the original five gallons of dip, leaving two gallons and three quarts thereof unaccounted for.

"It is obvious that the vat solution contained eleven or twelve per cent more of arsenic than it should have contained when the cattle were dipped on the 17th and 24th, and it is just as obvious that somebody put more of the arsenic solution in the vat than the testimony shows was put in by defendant and Mr. Rochell. The petition does not charge defendant with having put this excess amount of arsenic in the vat, so we may drop that phase of the inquiry. The charge against defendant is that by a careful and proper test of the vat solution he could have and should have discovered the excess amount of arsenic therein, in which event he would have advised plaintiffs of the fact and not to dip their cattle in the solution as it then stood. In other words, the charge is that it was the carelessness and negligence of defendant in not finding the excess, in a proper and correct test which he was duty bound to plaintiffs to make, that caused them the damages resulting from the loss of their cattle.

"Was defendant careless and negligent in the performance of his duties, official or assumed, to plaintiffs, in relation to the dipping of their cattle?

"The evidence does not show that he was. The evidence establishes the fact that he is competent to give advice in relation to dipping cattle and to correctly test and charge the contents of a vat. He tested the vat on the 17th of June in the way that is agreed to be proper and correct. There being no evidence whatever to contradict the correctness of his reading of the tester on that date, his evidence as to what the reading was must be accepted as true and conclusive on this point. That reading being correct, and the amount of arsenic in the solution being within accepted and proper limits, defendant was

not negligent and did not violate any duty he owed to plaintiffs in advising them to dip their cows in their vat on that date. The experts all agree, as well as the non-experts, that, accepting his test on the 17th as being correct, it was not error for defendant to advise plaintiffs to add two more quarts of the arsenic solution to the vat in preparation for their dipping on the 24th, especially in view of the fact that a large number of cattle were dipped in the vat on the 17th. So there was no negligence or breach of duty here. It seems to be agreed that cattle should not be dipped more often than every fourteen days. Here that period was divided in half. It is alleged and plaintiffs undertook to prove that defendant advised plaintiffs to dip the second time in seven days. Plaintiff Rochell says that defendant told him to dip in seven days. Defendant denies it. Plaintiffs carry the burden of proving this fact, and, as defendant's denial of the fact off-sets Mr. Rochell's affirmation of the fact, plaintiffs fail to discharge the burden of proof, and the fact stands unproven and as if never alleged.

"While it was not necessary, under the allegations of the petition, for defendant to show from what source the excess amount of arsenic entered the dipping solution, he did, nevertheless, produce a witness, George Williams, who testified that, at Mr. Rochell's request, he added said excess amount of the arsenic solution, before the cattle were dipped on the 17th. As this question is not an issue in the case, it is not necessary for the Court to pass on the weight and effect of this testimony. However, it does afford a possible means by which the excess amount of arsenic could have been placed in the vat, that is, by some person other than either Mr. Rochell or Mr. Mitchell.

"Learned counsel for plaintiffs, evidently realizing the weakness of the evidence adduced by plaintiffs in support of their allegations of negligence on the part of defendant, very ably argue in their brief that plaintiffs should recover under the doctrine of 'res ipsa loquitur.' That doctrine asserts that where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of events does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. The occurrence of an injury under the circumstances therein set forth raises a presumption or permits an inference that the party charge was guilty of negligence. 45 C. J., page 1193, par. 768.

"That doctrine has no application here. Defendant not being charged or accused of putting the excess amount of arsenic in the dipping solution, and as he is not charged with having the control or management of the can containing that solution, he is not required to explain how the solution got out of the can, nor how it got into the vat.

"It is most unfortunate that plaintiffs should have to bear the loss they have sustained in the death of so many valuable cattle. However, the evidence fails to show that defendant in any way caused the loss and he cannot be bound to repair it.

"Plaintiffs have failed to make out their case and there should be judgment rejecting their demands, with costs.

"And it is so ordered."

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is affirmed, with costs.